# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JEAN NIRAVANH, | ) | 1:04cv6704 OWW DLB |
| | ) | |
| | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| Plaintiff, | ) | REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BACKGROUND**

Plaintiff Jean Niravanh ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") regarding her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge, for findings and recommendation to the District Court.

**FACTS AND PRIOR PROCEEDINGS**[1]

Plaintiff filed her application on February 7, 2002, alleging disability since December 1, 2000, due to feeling nervous, anxious feelings, irritability, anger, hearing voices, depression and abdominal pain. AR 78-80, 83-92. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 65-68, 70-73, 74. On June 18, 2003, ALJ Joanne S. Birge held a hearing. AR 309-328. On September 19, 2003, ALJ Birge found that Plaintiff was not disabled. AR 15-24. On October 25, 2004, the Appeals Council denied review. AR 5-9.

Hearing Testimony

ALJ Birge held a hearing on June 18, 2003, in Fresno, California. Plaintiff appeared along with her attorney, Gina Fazio. AR 309. A Laotian interpreter assisted at the hearing.

Prior to Plaintiff's testimony, counsel indicated that she was waiting for records from Dr. Tieu and the ALJ agreed to leave the record open for two weeks. AR 313.

Plaintiff testified that she was 50 years old at the time of the and lived with her husband and two of their children. AR 314. She is supported by her children. AR 314. She attended adult school to learn English when she came to the United States from Laos. AR 314-315. She can read some English. Plaintiff has a driver's license and took the written test in English. AR 315.

She worked on her own farm up until about four years ago, when she had to stop because of pain in her joints, muscles, low back and stomach. AR 316. During the day, she stays home and takes care of the house, cleaning sometimes. AR 317. She sometimes goes to the temple and only drives by herself when her husband or children cannot drive her and she feels well enough. AR 317.

She takes medication for pain and diabetes and tests her blood sugar every day. AR 318. Sometimes it is 40, sometimes it is over 200. AR 318. She explained that she eats "normal" because otherwise she feels tired. AR 318. Although her doctor told her what she couldn't eat,

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

she sometimes "taste it a little bit." AR 318-391. Her depression medications put her to sleep and do not help. AR 319. She sees a counselor once a month, but doesn't go to group therapy because she doesn't know how to get there. AR 319-320.

When questioned by her attorney, Plaintiff explained that she has pain in her legs and cannot walk or stand in one place. AR 320. If she sits in one place for an hour, her legs get swollen. AR 320. She also testified that she has pain in her arm and cannot lift anything heavy, even a half-bucket of water. AR 320. She has numbness in her hands and a problem with dizziness. AR 321. She is dizzy every time she gets up and often has blurry vision. AR 321. She told her doctor about this and he prescribed medication, but it does not help. AR 322. Her doctors thought this might be related to her diabetes and asked her not to eat anything sweet. AR 322. Although she tries to avoid sweet things, she feels like her body needs it sometimes and will have apple or orange juice. AR 322.

She is not having problems with her medications. AR 323. She sometimes has memory problems and has trouble sleeping and sometimes sleeps during the day. AR 323. When questioned by the ALJ, she explained that although her depression medication makes her sleepy, it doesn't put her to sleep until the next morning and she will wake up in the middle of the night. AR 324.

On days when she feels better, she does a little exercise while she watches television. AR 324. This means that on a good day, she cleans up, washes pots and pans, takes care of the kitchen, lifts up her arms and legs while sitting in the living room, and cleans the bathroom. AR 324. Even though her doctors told her that exercise is important, she does not take a walk every day as it depends upon her condition. AR 324. She said she could walk a half mile on some days. AR 325. The most she can walk is one mile, but she has to rest along the way. AR 325. She thought she could sit for five to ten minutes before needing to change her position. AR 326. She could stand for 20-30 minutes, at most. She could lift no more than 10 pounds because of low back pain. AR 326.

She sometimes has suicidal thoughts when she is depressed and last had such thoughts last month. AR 326. She has never tried to kill herself. AR 327. She sometimes hears people calling her name. AR 327.

Medical Record

A November 9, 1992, x-ray of Plaintiff's lumbar spine revealed mild degenerative arthritis. AR 175. An x-ray of Plaintiff's lumbosacral spine on July 30, 1994, was normal. AR 163.

On September 25, 2000, Thieu V. Nguyen, M.D., treated Plaintiff for diabetes and hypercholesterol. He indicated that her compliance with her diabetes medication was poor. AR 195.

Plaintiff saw consultive examiner Steven Stoltz, M.D, on November 1, 2000. Plaintiff complained of a history of chest pain, vision problems and bilateral lower leg pain. Examination of her back revealed no tenderness to palpation, negative straight leg raising, no muscle spasm and equal tone throughout. There was normal range of motion in Plaintiff's neck, back and extremities. She had good muscle tone, a normal sensory examination and normal gait. Dr. Stoltz diagnosed non-cardiac chest pain, vision deficits, leg pains, diabetes mellitus and hypertension. He found no evidence of any significant medical condition that would restrict her activities. AR 196-201.

On May 31, 2001, Hoang Tieu, M.D., performed a psychiatric evaluation. She complained that she was depressed, tired and could not sleep. On mental status examination, Plaintiff was awake, alert, cooperative, had good eye contact, and her facial expression was sad. Her affect was restricted and her concentration was decreased. Her abstraction was okay and her attention and memory were decreased. Her judgment and insight were fair. She denied suicidal or homicidal ideation, but she said she heard voices calling her name and saw imaginary people. Dr. Tieu diagnosed post traumatic stress disorder ("PTSD") and major depressive disorder, single episode, severe, with psychotic features. He prescribed an antidepressant and medications to help her sleep and control her psychotic symptoms AR 203-205.

1            Plaintiff returned to Dr. Tieu on June 11, 2001.  Plaintiff indicated that she was taking her
2    medications regularly, but still felt depressed.  She was crying and was isolative.  She was
3    hearing voices and believed that other people were after her.  Dr. Tieu increased her medication.
4    AR 306.
5            On June 28, 2001, Plaintiff saw Dr. Tieu and reported that she was taking her medications
6    regularly and was feeling better.  She did not socialize, however.  Dr. Tieu found that Plaintiff
7    was doing better gradually and instructed her to continue the same medications.  AR 305.
8            Plaintiff returned to Dr. Tieu on July 27, 2001.  Plaintiff indicated that she was taking her
9    medications regularly and was feeling better.  She was also sleeping better and her appetite was
10   okay.  She enjoyed walking and sometimes watching television.  Dr. Tieu noted that Plaintiff was
11   feeling better gradually and should continue the same medications.  AR 304.
12           On January 23, 2002, Plaintiff underwent bladder surgery to correct urinary incontinence
13   and prolapse.  AR 234-235.
14           On July 6, 2002, Plaintiff saw Frank Wilson, Jr., M.D., for a consultive psychiatric
15   evaluation.  Plaintiff complained that she could not sleep, had nightmares, was angry and easily
16   saddened and was forgetful.  Plaintiff indicated that her problems started five years ago when her
17   children started running away from home and getting into trouble.  She said that she could not
18   sleep at night unless she took her medication, and had pain in the joints of her hands and stomach
19   and headaches.  Plaintiff reported that she sits and walks around, and visits friends and relatives.
20   She does her own shopping, cooking and household chores.  She drives, but claims to have no
21   interest in anything.  On mental status examination, Plaintiff appeared depressed.  The fact that
22   she had a driver's license indicated that her intellectual functioning is equal to her peer
23   functioning or better than some Laotians who have come here.  Her insight and judgment were
24   fair.  She appeared down and her affect was somewhat constricted.  Dr. Wilson diagnosed
25   dysthymic disorder and dependent personality.  Her GAF score was 65.  AR 206-208.
26           Dr. Wilson opined that she could maintain attention and concentration long enough to
27   carry out one or two step simple job instructions.  She could relate and interact adequately with
28   coworkers, supervisors and the public, but may have trouble "culturally" depending on her

5

coworkers.  She could carry out an extensive variety of technical and/or complex instructions.  AR 208.

On July 30, 2002, State Agency physician Allen Middleton, Ph.D., completed a Psychiatric Review Technique form.  He opined that Plaintiff suffered from dysthymia and PTSD.  Plaintiff had moderate restrictions in activities of daily living and moderate difficulties in maintaining concentration, persistence or pace.  She had mild difficulties in maintaining social functioning.  AR 209-221.

Also on July 30, 2002, Dr. Middleton completed a Mental Functional Capacity Assessment form.  He opined that Plaintiff was not significantly to moderately limited in her ability to understand, remember and carry out detailed instructions.  She was capable of performing simple and most detailed tasks, and could relate to coworkers and the public.  She was also capable of adapting to a standard work environment.  AR 222-224.

On September 26, 2002, Plaintiff saw P. Martinez, M.D., for treatment of her diabetes.  Her blood sugar was 310, but she reported that it was between 120-130 in the a.m.  She also complained of low back pain and whole body pain.  Her blood pressure was 130/76 and Dr. Martinez did not prescribe medication but indicated that it should be monitored.  Plaintiff was prescribed Glucopage for her diabetes and naproxen for her back.  AR 297

On October 4, 2002, State Agency psychiatrist Archimedes Garcia, M.D., completed a Mental Functional Capacity Assessment form.  He opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions. AR 272.  She was capable of performing simple, repetitive tasks for two hour intervals, finishing a normal workday, maintaining regular attendance and would not require special attention.  AR 274.  She was capable of interacting with coworkers and the general public and would not have difficulty adapting to usual work settings.  AR 274.

A treatment note from November 2002 indicates that Plaintiff's diabetes was under good control and her compliance was good.  AR 291.

In January and March 2003, Plaintiff's diabetes was under fair control and her compliance was fair.  AR 288-289.

On March 27, 2003, Plaintiff saw Dr. Tieu. Plaintiff reported that she was feeling better gradually, and sometimes walked around her house or watched television. She was also cooking and cleaning, but did not socialize with other people. Dr. Tieu indicated that Plaintiff was doing better and instructed her to continue her medications. AR 303.

Plaintiff saw Dr. Tieu on April 24, 2003, and indicated that she was taking her medications regularly but still felt depressed. Dr. Tieu noted that Plaintiff was still depressed and started her on a new medication. AR 302.

On April 28, 2003, Plaintiff's blood sugar was 105 and her diabetes was under good control. AR 286.

Plaintiff saw Dr. Tieu on May 23, 2003. She reported that she was taking her medications regularly, but that she still felt depressed. She complained of low energy and of being and tired isolative. She said she was sometimes suicidal but denied any suicidal ideations. Her mood was depressed. Dr. Tieu noted that Plaintiff was still depressed and increased her medication. He also encouraged her to take her medications regularly. AR 301.

On May 30, 2003, Plaintiff complained that she was feeling weak and that all of her muscles hurt. She indicated that Tylenol was not working. Laboratory tests showed anemia, but her diabetes was under good control. Her blood pressure was 106/66. AR 283.

**ALJ's Findings**

The ALJ determined that Plaintiff had the severe impairments of depression and PTSD, and that her testimony regarding her limitations was not totally credible. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform work without any exertional limitations and was mentally able to understand, remember and carry out simple and moderately complex instructions. The ALJ determined that Plaintiff's mental limitations did not significantly erode the range of unskilled work and applied Medical Vocational Guideline 204.00 to find Plaintiff not disabled. AR 23.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations,

the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[2] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

---

[2] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

disability; (2) has an impairment or a combination of impairments that is considered "severe" (depression and PTSD) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; and (5) retains the RFC to perform a significant number of positions in the national economy.  AR 23.

Plaintiff argues that the ALJ (1) did not fully and fairly review or develop the mental health evidence; (2) did not review the impairments at step two of the sequential evaluation process; and (3) did not properly consider Plaintiff's testimony.

## DISCUSSION

A.   Mental Health Evidence

Plaintiff first argues that the ALJ failed to develop or clarify Dr. Tieu's records and therefore arrived at incorrect conclusions regarding her mental health treatment.

In her decision, the ALJ found that Plaintiff had the severe impairments of depression and PTSD, which limited her to performing simple and moderately complex instructions.  AR 23.  In so finding, the ALJ reviewed Dr. Tieu's treatment notes dated May 2001 through May 2003 and his diagnoses of depression and PTSD.  AR 20.  The ALJ noted that Dr. Tieu prescribed anti-depressant medication, "which claimant purportedly found helpful."  AR 20.  She also explained that there was a gap in treatment from July 2001 to March 2003, and she returned, Dr. Tieu noted that she was feeling better and changed her medications.  AR 20.  She also noted that Dr. Tieu "admonished" Plaintiff to take her medications regularly.  AR 20.  The ALJ gave weight to Dr. Tieu's treatment notes insofar as they establish an 18-month gap in treatment and that Plaintiff's response to medication has been positive.  AR 21.

Plaintiff first argues that the ALJ incorrectly concluded that Plaintiff "stopped going" to Dr. Tieu and "impliedly recognized" that there was a problem in getting records from Dr. Tieu when she agreed to issue a subpoena.  Opening Brief, at 3.  Plaintiff argues that she reported that she attended monthly sessions, and saw Dr. Tieu in April and May 2001 and continued through

2002.  Plaintiff contends that the ALJ should have confirmed Dr. Tieu's noncompliance through a specific request to Dr. Tieu about the status of the missing records.

It is Plaintiff's burden to produce full and complete medical records, not that of the Commissioner.  *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).  However, when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence, the ALJ has a duty to develop the record.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001).  The ALJ may discharge this duty in one of several ways, including subpoenaing claimant's doctors, submitting questions to claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.  *Id.*

Here, the ALJ subpoenaed Dr. Tieu's treatment notes and he submitted treatment notes through May 2003.  AR 299-306.  The ALJ also kept the record open for two weeks after the hearing in response to counsel's report that she was waiting for treatment records from Dr. Tieu.  AR 313.  These actions were certainly sufficient to discharge the ALJ's duty to develop the record.  Dr. Tieu submitted treatment notes in response to the subpoena, and the ALJ was entitled to draw logical inferences flowing therefrom.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Even if the ALJ erred by not further inquiring as to whether treatment notes were missing[3] and incorrectly concluded that Plaintiff had an 18-month gap in treatment, her findings as to Plaintiff's mental impairment were supported by substantial evidence.  In finding that Plaintiff could perform simple, repetitive tasks, she gave substantial weight to the opinion of consultive examiner Dr. Wilson, who determined that Plaintiff had dysthymic disorder and dependent personality but could maintain attention and concentration long enough to carry out one or two step simple job instructions.  AR 20, 208-209.  *See Magallenes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (opinion of examining physician is substantial evidence).  The ALJ also

---

[3] The only evidence Plaintiff submits in support of her argument that she saw Dr. Tieu during the "gap" cited by the ALJ are her own statements.  She points to her hearing testimony that she saw Dr. Tieu once a month.  AR 319.  She also cites her disability reports submitted in support of her applications.  In a July 2001, disability report, Plaintiff indicated that she first saw Dr. Tieu in April 2001, last saw him in May 2001 and was scheduled to see him on August 25, 2001.  AR 96.  In a February 2002, disability report, she reported that she first saw him in June 2001, last saw him on February 8, 2002, and was scheduled to see him on March 8, 2002.  AR 86.

10

gave considerable weight to the State agency physicians' opinions that Plaintiff could perform simple, repetitive tasks. AR 21, 222-224, 274. *See* SSR 96-6p.

Insofar as Plaintiff contends that the ALJ did not fully report the mental health evidence and only reported the "information hurting Plaintiff," her argument fails. Opening Brief, at 3. Plaintiff disagrees with the ALJ's notation that in March 2003, Dr. Tieu indicated that Plaintiff was feeling better. She also contends that the ALJ ignored the fact that her PTSD and major depressive disorder were severe with psychotic features. While these notations may have been in the record, there also existed evidence that Plaintiff's mental impairments were well controlled with medication and that Plaintiff did feel better. AR 303-305. The ALJ is responsible for resolving conflicts in the medical evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Id.*

B.   Step Two Analysis

Plaintiff next argues that the ALJ did not review her impairments at step two of the sequential evaluation analysis. She contends that the ALJ dismissed Plaintiff's diabetes, anemia, hypertension, degenerative lumbar disease and urinary stress incontinence.

As is her practice Plaintiff's counsel, has presented an argument without support. Her argument consists of four sentences and does not include an analysis of the law or evidentiary support. Although Plaintiff includes cursory cites to the record and case law, counsel does not analyze the evidence under the correct standard. She makes conclusory claims unsupported by evidence, apparently hoping that the Court will adopt her argument without any analysis of the record or will scour the record in an attempt to find support for Plaintiff's argument.

Giving Plaintiff the benefit of the doubt, she appears to argue that her diabetes, anemia, hypertension, degenerative lumbar disease and urinary stress incontinence impose some limitations that should have been examined at step two, yet she does not point to any supporting evidence.

At the second step of the sequential evaluation of disability, the ALJ determines whether a claimant has a severe impairment or combination of impairments. A severe impairment is one

11

that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 1520(c). Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations, dealing with changes in a routine work setting, and performing ordinary physical functions like walking and sitting. 20 C.F.R. § 404.1521(b). An impairment or combination of impairments is found "not severe" if the medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). SSR 85-28.

Here, the ALJ determined that Plaintiff had the severe impairments of depression and PTSD. She did not find any physical impairments. AR 19. As to Plaintiff's hypertension and diabetes, the ALJ found that these impairments were reasonably controlled with medications and pursuant to the consultive examination by Dr. Stoltz, did not result in any limitations. AR 20. *See Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983). Similarly, the ALJ noted Plaintiff's urinary incontinence but properly found that this was corrected by surgery in January 2002. AR 19. The ALJ also noted Plaintiff's low back pain and found that there were no clinical, laboratory or radiological findings to support a finding that it was a severe impairment. AR 20. Indeed, Plaintiff had an x-ray of her lumbar spine in 1992 that showed only mild degenerative arthritis. AR 175. Nor did Dr. Stolz find any resulting limitations. AR 196-201. Insofar as Plaintiff contends that her anemia imposes a significant limitation, there is nothing in the record to support such a finding. The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

C.    Plaintiff's Testimony

Finally, Plaintiff contends that the ALJ failed to evaluate her testimony pursuant to SSR 96-7p. Again, this argument is difficult for the Court to analyze because Plaintiff's counsel has set forth a boilerplate argument used in numerous cases with little, if any, evidentiary support or explanation.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

First, Plaintiff incorrectly argues that SSR 96-7p sets forth a mandatory procedure through which an ALJ must assess the claimant's credibility. While courts give the SSRs some deference, they do not have the force of law. *Holohan v. Massanari,* 246 F.3d 1195, 1203, n. 1 (9th Cir. 2001).

Second, the ALJ made findings sufficient to allow the Court to determine that she did not arbitrarily reject Plaintiff's testimony. The ALJ first explained that Plaintiff's allegations were not supported by the medical evidence, which demonstrated that Plaintiff's diabetes was under fair control and did not cause the types of problems Plaintiff alleged. AR 21, 196-201, 283, 286, 288-289, 291. The ALJ further explained that the evidence did not support Plaintiff's allegations of limitations due to her low back pain. AR 21. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (whether subjective pain testimony is corroborated by objective medical evidence is a relevant factor in ALJ's credibility analysis).

The ALJ next explains that Plaintiff's present course of treatment does not support her statements, as she takes only over-the-counter medications for pain. AR 21. *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (ALJ may consider infrequent medical treatment or minimal use of pain medication). Similarly, the ALJ noted that Plaintiff was not prescribed any of the customary medications for her alleged impairments, such as Meclizine for dizziness. AR 21-22.

The ALJ also properly examined Plaintiff's own conduct and determined that it discredits her claims of mental problems. AR 22. For example, Plaintiff has not sought treatment to a degree that would suggest her impairments are as troubling as she asserts. AR 22. Although Plaintiff contended that she did not seek psychiatric counseling because she could not find the mental health clinic, she is able to do other things she wants to do. AR 22. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ may discredit claimant's testimony based on inconsistent statements). Plaintiff was also "extremely talkative and animated" at the hearing, which contradicts Plaintiff's claims of severe depression. AR 22. *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (ALJ may properly cite claimant's demeanor at the hearing as part of a credibility determination). As for Plaintiff's daily activities, she was able to clean the bathroom, wash pots and pans, participate in activities with family members, go shopping, attend religious services, interact with family members and drive. AR 22. *Thomas v. Barnhart,* 278 F.3d at 958. Plaintiff also testified that she was not compliant with her exercise and diet. *Bunnell*, 947 F.2d at 346 (holding that "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" is relevant to credibility finding).

Finally, the ALJ properly questioned Plaintiff's credibility based on her reported inability to communicate effectively in English. AR 22. The ALJ recounted Plaintiff's communication at the hearing, noting that Plaintiff spontaneously answered questions before they were translated, more than once corrected the interpreter's translation, and otherwise generally acted as if she understood English very well. AR 22. *Smolen,* 80 F.3d at 1284.

## **RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.

1  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision
2  of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for
3  Defendant Jo Anne B. Barnhart and against Plaintiff Jean Niravanh.
4       These findings and recommendations will be submitted to the Honorable Oliver W.
5  Wanger, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after
6  being served with these findings and recommendations, the parties may file written objections
7  with the court.  The document should be captioned "Objections to Magistrate Judge's Findings
8  and Recommendations."  The parties are advised that failure to file objections within the
9  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951
10 F.2d 1153 (9th Cir. 1991).

12       IT IS SO ORDERED.
13       Dated:   **September 27, 2005**                    **/s/ Dennis L. Beck**
   3b142a                                                UNITED STATES MAGISTRATE JUDGE